[File No. Cr. 137.]

STATE OF NORTH DAKOTA, Appellant, v. JOE WICKS, Respondent.

(276 N. W. 690.)

2

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

Opinion filed September 28, 1937.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■

■■■■■

*P. O. Sathre,* Attorney General, and *Irving Koths,* State's Attorney, for appellant.

*Jacobsen & Murray* and *R. F. Gallagher,* for respondent.

MORRIS, J. This is an appeal by the State of North Dakota from an order of the district court sustaining a demurrer to an information. The first matter to be considered is a motion by the defendant to dismiss the appeal upon the ground "that the appeal has not been taken and perfected within the time fixed and prescribed by statute." The minutes of the court disclose that on June 11, 1936, this case was called for trial, that the defendant demurred to the information on the ground that it does not state facts sufficient to constitute a public offense, which demurrer was sustained by the court. A written order sustaining the demurrer was signed by the court on September 16, 1936. The notice of appeal to the Supreme Court was served on October 6 and filed on October 8. Chapter 217, Session Laws of North Dakota for 1927, specifies the time for appeal in criminal cases and provides that "an appeal from a judgment may be taken within three months after its rendition and from an order within sixty days after it is made."

The defendant contends that the order was, in fact, made on the 11th day of June when the court orally sustained the demurrer and the clerk made a written notation thereof in the minutes, and that consequently the time for appeal had expired when the notice was served. We cannot agree with this contention. Section 10740, Compiled Laws, provides: "Upon considering the demurrer, the court must give judgment either sustaining or overruling it, and an order to that effect must be entered upon the minutes." Section 7939, Com-

piled Laws (Code Civ. Proc.) provides that every direction of a court or judge made or entered in writing and not included in a judgment is denominated an order. The Code of Criminal Procedure does not define an order. Under the criminal procedure it cannot be contended that a notation made by the clerk upon his minutes which is not signed by the court is an order of the court; neither can an oral statement of the court that he is sustaining the demurrer constitute such an order. It must be in writing and signed by the judge. No such order was made until September 16 and the notice of appeal having been served and filed within sixty days after that date, the appeal was taken in time.

The defendant was charged in the information with committing the crime of falsely canvassing votes while judge of election, committed as follows: "the said Joe Wicks being one of the Judges of election of Cannon Ball Precinct, Sioux County, North Dakota, did wilfully and unlawfully make a false canvass of the votes cast at the General Election held on November 8th, 1932 by then and there misreading and falsely reading to the clerks of election, who were then and there duly recording the votes, certain ballots cast at said election and the names of candidates thereon; thus wilfully and unlawfully falsifying the returns that were made of the canvass at said election, knowing the same to be false." The statute under which the prosecution is brought, § 9283, Compiled Laws of North Dakota for 1913, reads as follows: "Every inspector or judge of election, member of any board of election or of canvassers, poll clerk, messenger or other officer authorized to take part in or perform any duty in relation to any canvass or official statement of votes cast at any election, who wilfully makes any false canvass of such votes, or makes, signs, publishes or delivers any false returns of such election, knowing the same to be false, or wilfully defaces, destroys or conceals any statement or certificate intrusted to his care, is guilty of a misdemeanor."

The defendant demurred upon the ground "that said information does not state facts sufficient to constitute a public offense," thus challenging the sufficiency of the information. The state asserts that the demurrer is too indefinite in that it does not distinctly specify wherein the information fails to set forth facts which constitute a public offense. The position of the state on this point cannot be sustained.

The demurrer is in the language or ¶ 4 of § 10,737, Compiled Laws of North Dakota for 1913, and is sufficient.

We now pass to the consideration of the information. Section 10,685 requires that it must contain "A statement of the acts constituting the offense, in ordinary and concise language, and in such manner as to enable a person of common understanding to know what is intended." Section 10,686 requires that the allegations of the information must be direct and certain as regards:

"1. The party charged.

"2. The offense charged.

"3. The particular circumstances of the offense charged when they are necessary to constitute a complete offense."

Section 10,691 provides that: "The words used in an information or in an indictment must be construed in their usual acceptation in common language, except words and phrases defined by law, which are to be construed according to their legal meaning."

Section 10,692 provides that: "Words used in a statute to define a public offense need not be strictly pursued in the information or indictment; but other words conveying the same meaning may be used."

Section 10,693, in so far as it applies to the pleading of facts in an information, provides that it is sufficient if it can be understood therefrom:

"6. That the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended.

"7. That the act or omission charged as the offense, is stated with such a degree of certainty as to enable the court to pronounce judgment upon a conviction, according to the right of the case." Whether the information states facts sufficient to constitute a public offense must be determined in accordance with the above statutory provisions.

It is argued that there is no allegation that the clerks wrote down what the defendant misread and falsely read to them, and that the statement, "thus wilfully and unlawfully falsifying the returns that were made of the canvass," is a mere conclusion. Section 983, Supplement to Compiled Laws, sets forth in a general way the duties of the election board in connection with the canvass of the votes. The stat-

ute clearly contemplates that the canvass includes the examination of the ballots to ascertain how persons voted, the announcement of the votes and their entry in the tally books by the clerks of the election, and the other proceedings necessarily incident to the determination of the number of votes and for whom they were cast in the respective precincts. Bowler v. Eisenhood, 1 S. D. 577, 48 N. W. 136, 12 L.R.A. 705.

The returns contemplated by the statute are the results disclosed by the tally books kept by the clerks. The information charges that the defendant made a false canvass by misreading and falsely reading to the clerks who were recording the votes certain ballots and the names of the candidates thereon, thus falsifying the returns that were made of the canvass. While the statement at which the defendant's criticism is directed is in the form of a conclusion, it is one that can only be drawn from certain facts; the wilful and intentional falsely reading of the ballots by the defendant to the clerks who were making a record of the votes in the tally books, and that they entered and made a part of the returns what the defendant misread and falsely read to them. The only conclusion that can be drawn from the language is that the defendant wilfully did that which is made a misdemeanor by § 9283.

The contention that the information fails to state in specific language that the clerks wrote down that which the defendant falsely read to them is highly technical. The statement that the false reading to the clerks resulted in falsifying the returns of the canvass could only be true if the clerks wrote down that which was falsely read to them.

The defendant points out that the two judges and the inspector are required by statute to examine the ballots and that if they were performing their duty they must have participated in or at least have known what the defendant did. It is immaterial in this case whether or not the other judge and the inspector participated in the false reading. The question here is solely as to the sufficiency of the information against this defendant, which is not dependent on the guilt or innocence of other members of the election board. Com. v. Edgerton, 200 Mass. 318, 86 N. E. 768.

In the case of People v. Griesheimer, 176 Cal. 44, 167 P. 521, the

court, in considering a demurrer to an information charging the defendant with the crime of obtaining money by false pretenses, said: "The particular defect in this information, as urged by appellant, is that it does not show the causal connection between the false pretense and the parting of the property by the prosecuting witness, and therefore fails to state facts sufficient to constitute a public offense.

"We are of the opinion that as against the defendant's general demurrer the information should be held sufficient on appeal. While there is no direct allegation that the money was paid to the defendant as a subscription or loan to the Fatherland Magazine, a reader of the information could hardly draw from it any other inference than that the payment was made for such purpose. It may be conceded that a direct allegation to this effect would have been more in accord with technical requirements. But what was intended to be charged in this connection is perfectly plain from the language in fact used, and no person of common understanding could fail to understand that it was substantially charged, by necessary inference at least, that the money was paid because of the alleged false representations, and for the purpose suggested thereby."

While not a model pleading, the information in this case contains a sufficient statement of facts to apprise the defendant of the ingredients of the offense with which he is charged. The language may not be well chosen but the meaning is obvious. A person of common understanding could not read the information without knowing what was intended. See State v. Erickson, 14 N. D. 139, 103 N. W. 389; State v. Longstreth, 19 N. D. 268, 121 N. W. 1114, Ann. Cas. 1912D, 1317.

In State v. Erickson, supra, the defendant was charged in an indictment with committing the crime of keeping and maintaining a common nuisance. It was held that the allegation that the defendant unlawfully kept a place where intoxicating liquors were sold necessarily implies that the sales were unlawful and that the indictment was not demurrable for failure to specifically allege unlawful sales.

If the document which we are considering in this case was anything other than a criminal information, it would not for a moment be doubted that it charged the defendant with the commission of the crime of falsely canvassing votes. The fact that the document is an informa-

tion in no way changes the common import of the words used. There is no room for doubt as to its true meaning. It is, therefore, good against demurrer.

Reversed.

CHRISTIANSON, Ch. J., and NUESSLE, J., concur.

BURR, J. (dissenting).

I dissent. A false canvass is more than merely reading the names to the clerk, even though a false reading. The information should show the false reading was recorded so that the canvass was false.